Next case is 4-14-0683, Andrew James Stolp v. The Department of State Police. And for the appellant, it's Timothy McPike, correct? And for appellee, it's Luke Thomas, is that right? Yes. Alright, Mr. McPike, you may proceed. May it please the court, counsel. A preliminary matter, your honors. There's pending in this court the department's motion to cite supplemental authority filed March 24th. Because this area of law is undergoing rapid development, our office currently has about eight of these cases on appeal. I would like to preliminarily address three points that those cases that I've asked for leave to cite make on this case. You may cite to that authority during argument here. Thank you, your honor. The first point is in favor of Mr. Stolp, is that based on the holdings of the O'Neill and the Frederick cases, the department withdraws our argument on pages 22 and 27 of our brief. That argument was that the circuit court lacked subject matter jurisdiction under Section 10A of the Foyd Act because the appeal was properly to the director rather than to the circuit court. Both O'Neill and Franklin held that where it's a misdemeanor crime of domestic violence, that is in effect a revocation of the Foyd card based on domestic battery, which is one of the statutes under Section 10A that does subject matter jurisdiction in the circuit court. So therefore, the department withdraws our argument and agree that the circuit court was the proper forum for Mr. Stolp to bring his petition. The second point regarding those cases is that both the Frederick and O'Neill opinions held in favor of our argument before this court, that under the 2013 amendments to the Foyd Act, the Firearm Owners Identification Card Act, the circuit court lacks authority to order here the Foyd card to be returned to the circuit court, and that is in effect a revocation of the Foyd card based on domestic battery, which is one of the statutes under Section 10A that does subject matter jurisdiction in the circuit court. So therefore, we here order the department to issue Mr. Stolp a Foyd card contrary to federal law, and as we argued in our briefs, and they were essentially the same facts in both Frederick and O'Neill, Mr. Stolp is federally barred from possessing weapons under the Federal Gun Control Act because of his conviction for battery that had an element of a domestic relationship in it. He was federally barred at the time that he, at the time that the department revoked his card in 2008, and he is certainly barred at the time that the circuit court issues its order in 2013. And therefore, the court's, circuit court's order was contrary to Section 10C4 of the Foyd Act, which are the 2013 amendments to that act, which hold that a court shall not issue, order a card to be issued contrary to federal law. Mr. McPike, just backing up and looking at this from a procedural standpoint, how the case got from the circuit court to the appellate court, it stems from an order that was entered by the circuit court, was it June 20th of 2014? I'm reading the judge's date correctly. Yes, June 26th, I think, denying intervention. And the substance, or the bulk of the appellate argument doesn't have to do with the propriety of the court's action relative to the petition to intervene. It has to do with the substance of the underlying matter. And why are we talking about that? The order did not, contrary to what is said in the briefs, the order did not deny the 2-1401 relief because it hadn't been allowed. That petition was not of record. All that was pending before the court and all that was decided by the court was the department's petition to intervene, and it denied that. What's your response? We did argue in our brief, Your Honor, that the circuit court heard in regard to the section 2-408 petition to intervene and denying that. The court's reasoning was that the state's attorney adequately represented the department's interest. That was an error because, as we argued below and as we argued in our brief here, the state's attorney made no objection to Mr. Stolz's petition for his FOIA card. On the record, we argued in our petition to intervene that the state's attorney didn't adequately represent our interest because the state's attorney should have argued, as we are arguing here, that the circuit court lacked statutory authority under his 2013 amendments to the FOIA Act. So that argument was made below and is in our briefs here. Well, then, what is the requested relief here in the appellate court? It seems, in reading the brief, it's relief relative to the substance of this issue, whether or not the department should be required to issue the FOIA card. Isn't the appropriate relief here to address the propriety of the denial of intervention and either affirm that denial or reverse it? And if it's reversed, then it goes back to the trial court to entertain the 2-1401 petition. Well, actually, to correct your honors characterization, if you look at the trial court's order, which is on page A3 and A4, the court, first of all, found that the petition to intervene was denied because, as I said, the court erroneously held that the state's attorney adequately represented our interest, which is one of the requirements of section 2-408 to intervene. Circuit court also went on to say, although it need not rule on the merits of the motion to vacate, this is on page A4 of our appendix, our appellate brief, paragraph 6 of the court's order. Although this court need not rule on the merits of the motion to vacate, that's the 2-1401 petition, this court finds that if it did reach the merits, it would deny said motion for the reasons stated in the record in the hearing. And that was basically, that reason was that the circuit court erroneously held that under the Illinois Supreme Court decision in quorum, despite the 2013 Foyt amendments, three judges, three justices in quorum held that the circuit court could nevertheless issue a Foyt card because that was essentially restoring the Second Amendment rights. Isn't that just advisory? The court's holding? Well, what you just read in paragraph 6 of that order. If it were to reach the issue, it would rule in a particular way. Well, as to what this court has jurisdiction to do, our request for relief was that it reverse the circuit court's order regarding the petition to intervene and because all the issues on the petition to vacate and are questions of law, it would basically, whether quorum applies to bar relief here, pure question of law. All the facts are undisputed and two appellate courts have already ruled in our favor on that issue. This court can go ahead and make that ruling. There's no reason to send it back to the circuit court just to rule on an issue of law. So we should ignore the fact that there is no ruling on the underlying 2-1401 petition and reach the merits of it? Certainly, you have all the jurisdictional capability to issue on a rule of law that the circuit court did. Plus, I would argue the circuit court essentially did. You could say that it was just an advisory opinion, but we know how the circuit court is going to rule because the circuit court's ruling was based solely on interpretation of the Supreme Court's decision in quorum and what that decision implies as to the circuit court's authority to issue a card contrary to federal law after the 2013 Floyd Act amendments. A pure issue of law, a pure issue of interpretation of the authority of the court decision. There isn't any need to send it back to the circuit court. This court has all the subject matter jurisdiction that a circuit court would have to rule on that issue. And assuming the court agrees that the circuit court erroneously denied our petition to intervene, the section 21401 petition automatically arises as an issue of law. That is before this court as well. Most of the cases we cite talk about either standing to intervene or standing to appeal. The standards are basically the same. If you sent it back to the circuit court, the circuit court, assuming it would make the same erroneous decision... Well, why would you assume that you have additional authority now that you would present? I do, but I'm saying it's a pure issue of law and if you reverse the circuit court's petition to denial of our petition to intervene, then you have subject matter jurisdiction to decide the 21401 petition. If you send it back to the circuit court, they'll make a ruling issue purely an issue of law of interpretation of quorum. And if that's right, it ends there. Otherwise, we come back up here and go through this argument again. We think that's unnecessary. Unless the court has specific questions about the authority of the quorum decision plurality, which is only three justices, as opposed to the four justices in the concurring and dissenting opinions that held the 2013 FOIA Act amendments apply to prohibit circuit courts from issuing a card contrary to federal law. Unless the court has specific questions about that, we make the same arguments in our brief that are explored in great detail in both the Frederick and the O'Neill decisions. I won't spend time rehearsing those unless there are questions. The only other issue that I should advise the court of, because I'm citing Frederick, is there is one point in Frederick that we are filing a motion for rehearing on. It doesn't change the decision in Frederick, but it does have an impact in this case. I'd like to take a moment just to explain that. Frederick considered which statute, which versions of the FOIA Act applied in that case. The pre-2013 Act or the 2013 Act. The distinction being, pre-2013, under the court's ruling in quorum, you had three justices holding and two justices concurring that said prior to 2013 amendments, the circuit court can issue, order the issuance of a card despite a bar under federal law. So the issue of which version of the statute applies determines whether the circuit court order here was good or not. Frederick, in paragraph 23 of that decision, held that the version of the statute that applies is the version at the time, in effect, at the time that the Department of State Police issues its revocation letter. Now in Frederick, that doesn't make any difference because they were both post-2013. The revocation letter issued in 2013. Here, the revocation letter issued in 2008. So under the paragraph 23 of Frederick, in this case, Mr. Stolt would get his card if the 2000, pre-2013 FOIA Act applied, which was the Act, in effect, in 2008 when the Department issued its revocation letter. We are filing a motion for rehearing on that because Frederick got that wrong. And the reason Frederick got that wrong, and another issue in this case that Mr. Stolt has raised, is whether the 2013 amendments are being retroactively applied to him when his conviction was in 2007. Now, Frederick's case addressed retroactivity and got that part of it right, as far as the Department is concerned. Frederick says the 2013 amendments have no retroactive impact at all. They are only to be applied prospectively to determine whether a FOIA card applicant can prospectively have a FOIA card. So there isn't any issue of retroactivity involved in the 2013 amendments. And I think if you look at the Frederick case, paragraph 24 and 25 of the Frederick case, that opinion also cites an earlier Supreme Court case, Hayassi, H-A-Y-A-S-S-I, which held in a similar issuance of a medical license, that there was no retroactive impact. So Frederick gets the fact correct that the 2013 amendments do not involve any retroactive application. But what that also means is that then the version of the statute that applies is not the version that was in effect at the time that the revocation letter issued. The statute that applies is the statute that's in effect right now. Under the case law that's explored in the Hayassi case, and its common statutory law, that unless an intervening statute, an amendment that's intervening in a case, has a retroactive impact on the parties, the court applies the law in effect at the time that the court makes its decision. Now this is a bit to throw at a court just merely on oral argument. And if the court feels that it would like further briefing on this issue, or if the court requests we will file our motion for rehearing in Frederick also with this case where we lay out the law on this, because it's a bit complex. But the basic argument is that unless an intervening statute has a retroactive impact on the case, the court applies the statute in effect at the time that the court makes its decision. Frederick erroneously held in paragraph 23 that the statute that applies is the statute at the time the department issues its revocation letter, and that is just incorrect. Now as I said, I know that's a complex argument, and the case law goes back to an U.S. Supreme Court case land graph involving retroactive impact, and then the Illinois Supreme Court's case land graph. And then the Illinois Supreme Court case commonwealth Edison, which adopted the federal land graph test for its determination of retroactivity. Those cases are fairly well-exploited in the Frederick decision, and I would refer you to Frederick paragraph 24, and the Hiasi case that it cites, Illinois Supreme Court case paragraph 23 and 24, which explain the whole area of retroactivity. And again, I would ask the court, if the court has any concerns about that, grant us leave to file, in this case, our petition for rehearing in Frederick, which we just haven't had time to prepare before this oral argument. All right. Thank you, Mr. McPike. Thank you, Your Honor. Mr. Thomas. May it please the court, counsel. Mr. McPike touched on some key dates and concepts in the court's inquiries, also raised basically what we believe to be the issues before the court here. The first key date that we're looking at is the date Mr. Stoltz's FOIA card was revoked, and that was in 2008. As counsel touched on in the Frederick case, as far as we can tell now, that is the law in place at this time, is that that court said that the appropriate statute to apply in determining whether or not the trial court would have had authority to remove this federal firearms disability would be the administrative action in the law in place at that time. And again, this administrative action, the revocation took place in 2008, pre the 2013 amendments. It's also important to note that the trial court noted that under that statute, or under that revocation letter, the department at that time did not advise Mr. Stoltz of his administrative remedies, and also didn't advise him of his right to pursue review of that within the circuit court. I think that's key if they're going to rely on the delay fashioned by filing the petition some five years later. The conviction was a 2006 conviction for battery, the record before the trial court, and this court does not indicate what led to that battery. It is also argued and says it's uncontested that the battery was as a result of Mr. Stoltz striking his daughter. Just to clarify the record, Mr. Stoltz did not have a daughter at that time, it was a living girlfriend's child, which may still in effect meet that standard, but wanted to make sure that that was clear for the record. Then we turn to what the trial court's authority is at the time it ruled on the petition, and also the motion for intervention. It's important to note that the order directing the state police to grant the FOIA card was a September 26, 2013 order. There was never a direct appeal taken from that order, and in fact the department did not even seek intervention until some four months later in January of 2014. So then that turns to whether or not the trial court properly exercises discretion in allowing or disallowing the motion to intervene at that time. The department's argument was twofold for why their petition should be fashioned as a petition for intervention as a matter of right. The first one they conceded was that, actually they argued that the trial court did not have subject matter jurisdiction to enter that order. That being removed, the trial court and this court's review should be whether or not the trial court properly exercised its discretion in some key areas. And as this court found under Rule 23 ordering Morris v. Macon County State's Attorney, the trial court, when faced with a petition to intervene as a matter of right, its discretion is more limited than under permissive intervention. First, the trial court has to determine whether or not the department's actions seeking intervention were timely, whether or not the party seeking intervention was adequately represented by the parties at the original hearing, and whether or not the party seeking intervention is affected by a ruling of that court. I think it's important to note in denying the motion for intervention, the trial court specifically found that the interests, if the department had any, were adequately represented by the state's attorney. It rejected the argument of the department that somehow the department is the sole and exclusive agency in the state of Illinois that can properly determine who should be issued a FOIA card and under what guise that the people of the state of Illinois are protected. What was the state's attorney's position in the trial court on the original request for the issuance of the FOIA card? As of record, he stated he had no objection. He took no position to promote the issuance of the FOIA card and also did not object to it. The department would likely argue that on its face, then, that concession would demonstrate inadequate representation because the department is diametrically opposed to the issuance of the FOIA card under these circumstances. So, under the statute, 2408, Intervention as a Bride, do you believe that the trial court's exercise of discretion was proper? I do believe so, because the department's position then would be that unless the state's attorney always opposes every petition, then they're not adequately representing the department. The statute doesn't state that the department is the proper party for these proceedings, it is the state's attorney. The state's attorney has discretion in all sorts of matters, in criminal and in these types of matters, to determine whether or not there is a viable legal argument or a viable reason to object. The trial court found all the statutory reasons why Mr. Stoltz should have his FOIA card. If the state's attorney, in fact, believed those to be true, there would be no reason for him to file an objection, simply for the fact to be adversarial in a matter where he otherwise wouldn't be opposed to the relief. Again, I think that touches on the legislative intent as to whether or not the state's attorney must confer with or defer to the department's position. If they're, in fact, opposed to it under all circumstances, then the legislature could properly determine that the state's attorney should be taken out of the equation and that all appeals would be handled either through administrative review, through the Department of State Police, or that the department, and not the state's attorney, use the proper party to name in the proceedings so that the department from the onset, if it was, in fact, in that position to be the agency or body of the state that is in the best position to determine whether or not FOIA card relief should be granted, then they could be the ones naming the statute, and that's not the case here. In fact, the legislature has found just the opposite and has taken those major crimes and major issues out of the administrative process and has put that upon the state's attorney and the local county court to make that determination. So I think the state's position, or the department's position, that they're in a better position to make sure that the underlying requirements and public policy of the FOIA card act are met is contrary to what the legislature has determined. So I don't believe that that has a whole lot of merit in their argument. Also, in regard to the intervention, the trial court specifically found, and there was, again, no direct appeal, that granting this relief was not contrary to federal law. Not getting to that point, that ruling, I don't believe, has ever been contradicted either. I know the department is trying to take the next step and argue why that's not proper because of the holding in quorum and the inferences made by the two appellate courts after that decision that somehow the trial courts post-2013 can't remove that federal firearm's disability. One of the things I think it's also important to note, and as we've raised in our brief, there are separate procedures, outlined statutorily that show that perhaps a prospective reading of the 2013 amendments are proper. That being specifically the section of the criminal code that we've referenced, wherein there is a procedure for the state to specifically establish a federal firearms disability within the criminal case itself. And it requires providing a notice to the defendant that, in fact, the crime may, in fact, be determined to be a crime of domestic violence under federal law. They're given an opportunity to oppose that or concede that. And if they either oppose it or stand mute, then the state is required to prove that if they're wanting the state law to impose that same disability to avoid issuance of a FOIC card, they have to establish that beyond a reasonable doubt. I think that stands in reason why retrospective or retroactive application of the law and that interpretation is incorrect. Due process would require that if you're going to, on a straight battery, later on have the penalties for a crime of domestic violence then that should be established not by the department reviewing arrest records or police records and establishing that via hearsay when the person has not had their day in court and there's been no factual determination to make that true. Here going forward, if that's going to be the case and the state wants to establish that under federal law, then the defendant will have an opportunity in court to have that determination made. And as the department has argued, the court simply ruled that they should have been allowed to intervene and their 1401 motion should be granted. Mr. Stolp has not ever had a day to contest that in court, whether it was at the 2006 hearing where he pled guilty, at the 2008 revocation, or even after the trial court specifically found that it was not contrary to federal law. All of that puts all of the determinations on unknown facts to the defendant and unknown facts to the trial court making that determination for the department to later come in and state that. So I think taking that out, it's contrary to a plain reading of the legislative intent because the same 2013 amendments to the Floyd Act were made under the same code establishing what procedures need to be followed if the state is actually going to argue that there is a federal firearms disability and that the battery or domestic battery is a crime of domestic violence under federal law. So I think that the legislature had envisioned that issue in due process arguments. Because otherwise, if you simply state that the act itself prohibits the trial court from being able to grant relief for anyone, who would otherwise be barred under federal law, the acts rendered meaningless. There would be no point in any party to ever seek Floyd card relief under Illinois law because virtually every crime that the party could petition to the circuit court for relief under the act would be a bar under federal law. Whether it be the felony conviction or the domestic battery conviction, all of those would prohibit a party under federal law from ever obtaining a Floyd card. Using the department's intent. So basically the department's, at least our position, the department's reading of the statute would be to render it meaningless. There would be no review of that. And I think one of the cases cited by the state, and it wasn't argued, was that that perhaps raises constitutional issues as well if that was actually argued in the case. In as much as they're distinguishing striking a stranger versus striking a family member. I mean, obviously neither one are appropriate. But in that case, there is really no distinction that can be made except for one party under Illinois law, according to the department, could never have their firearm rights restored through the statute. So we think that that too, the court needs to look at the entire public act if it's going to determine the legislative intent. So beyond that, I mean, I think that the court's questions as far as where we're at procedurally, I think it is to determine whether or not the motion to intervene, the denial of that was proper. And we believe that the denial of that was a proper exercise, even if you limit the scope of what the trial court could exercise as far as its discretion on determining that. Thank you. I'll just address two points raised by Mr. Thomas. First, he argues that as regarding to whether the state's attorney adequately represented the department's interest. He argues that unless the state's attorney always opposes the petition, the department would say they're not representing our interest. Well, that's a straw man argument. It's only where there's an existing on-the-face-of-the-petition claim that is clearly contrary to the statute. And in this case, where there's a very clear legal reason to oppose the petition, if the state's attorney doesn't advance the petition. If the state's attorney doesn't advance that in the circuit court, then the state's attorney is not representing the department's interest. In this case, on the face of the petition, Mr. Stolpe admitted that his battery was a battery of domestic violence. That's in the record, C1, paragraph 5 of his petition. He admitted it. It's a domestic battery. He can't now argue that, you know, it's not a domestic battery or the circuit court didn't determine that it was a domestic battery. He's admitted that fact. So we're clearly on the face of the petition. There is a legal basis to say that the court cannot issue the FOIA card. If the state's attorney doesn't make that argument, the state's attorney has not adequately represented the department's interest. And that's the case here. It's not an always thing. We're not saying that the department should always have a right to come in. But it should have a right to come in if the state's attorney has not presented all the legal defenses against ordering the petition. The second point that Mr. Thomas makes is that the 2013 amendments, in addition to limiting the circuit court's authority, to not being able to issue a card contrary to federal law, the 2013 amendments also had a provision that said in the underlying criminal case, if it's a battery, that court shall also make it that the state's attorney will then come in and say, yeah, but there's a domestic element here and therefore it's barred under federal law. That's the other part of the 2013 amendments. If I understand Mr. Thomas' argument, he's saying, well, he's denied due process because that didn't occur here, and of course it couldn't occur because the battery conviction was in 2007. Well, that doesn't make application retroactive here. And we argue on page 7 of our reply brief, first, it is impossible that the state or the circuit court could have followed those procedures in Stolz's 2000 battery conviction because that section did not exist in 2007. Now, that same claim was raised in the Illinois Supreme Court case Hiasi that the Frederick decision cites as reasons why the 2013 amendments do not have any retroactive impact. In Hiasi, they were appealing the subsequent statute that came in and said, anybody who was convicted of battery loses their medical license. The Illinois Supreme Court case said that is not a retroactive impact because it's your license going forward that's being affected. And the Frederick decision that we've cited to you for supplemental authority cites that. In that Hiasi case, the defendants there, the appellants there, raised the same argument that Mr. Thomas is raising here, that there were other provisions of that intervening statute that gave licensed medical practitioners certain hearings and things like that, that couldn't happen because their stuff happened many years earlier. And Mr. Thomas is arguing here, well, Mr. Stolz's battery happened many years earlier and the circuit court didn't make a finding that it was a misdemeanor crime of domestic violence. Therefore, he's denied his due process rights here. But Hiasi said, just because one part of the statute doesn't apply to these plaintiffs doesn't make the rest of the statute a retroactive impact. That's Hiasi at paragraph 19 of that case. And so there's two answers to Mr. Thomas' argument. First of all, he's already admitted his domestic battery, so it's irrelevant. Second, just because part of the 2013 FOIA amendments require another circuit court proceeding that can't happen here because it should have happened in 2007, that doesn't mean that it's a retroactive impact. And I know, again, that's a lot to talk about on oral argument. Mr. Pike, you've run out of time. Is there anything that you wish to say in conclusion? Then we would ask the court to reverse the circuit court's order denying our motion to intervene and reverse the circuit court's order granting Mr. Stolz a FOIA card on the ground that the circuit court lacked statutory authority under the 2013 FOIA Act amendments to grant that order. The order is void for lack of statutory authority to issue the order. Thank you, counsel. The case will be taken under advisement and a written decision will issue.